# EXHIBIT A

Part 2 of 2

JD(SF)–51–06
South San Francisco, CA

UNITED STATES OF AMERICA
BEFORE THE NATIONAL LABOR RELATIONS BOARD
DIVISION OF JUDGES
SAN FRANCISCO BRANCH OFFICE

SFO GOOD-NITE INN, LLC

　　　　and                                                    Case 20-CA-32754

UNITE HERE! LOCAL 2

*John Ontiveros, Esq. and Micah Berul, Esq.,*
　of San Francisco, California, for the General Counsel.

*Matthew Ross, Esq. and Danielle Lucido, Esq.*
　*(Leonard, Carder),* of Oakland, California, for the Union.

*Patrick Jordan, Esq, (Jordan Law Group)*
　of San Rafael, California, for Respondent.

## DECISION

### Statement of the Case

　　JAY R. POLLACK, Administrative Law Judge. I heard this case in trial at San Francisco, California, on April 18 through 20, May 23 and on June 13, 2006 in San Mateo, California. On October 14, 2005, Unite Here! Local 2 (the Union) filed the original charge alleging that SFO Good-Nite Inn, LLC (Respondent) committed certain violations of Section 8(a)(1) and (5) of the National Labor Relations Act, as amended (29 U.S.C. Section 151 et seq., herein called the Act). The Union filed the first amended charge on November 22 and a second amended charge on December 15, 2005. On March 1, 2006, the Regional Director for Region 20 of the National Labor Relations Board issued a complaint and notice of hearing against Respondent, alleging that Respondent violated Section 8(a)(1), and (5) of the Act. Respondent filed a timely answer to the complaint denying all wrongdoing. The General Counsel amended the complaint at hearing on April 18, 19 and June 13, 2006.

　　The parties have been afforded full opportunity to appear, to introduce relevant evidence, to examine and cross-examine witnesses and to file briefs. Upon the entire record, from my observation of the demeanor of the witnesses and having considered the post-hearing briefs of the parties, I make the following.[1]

---

　　[1] The credibility resolutions herein have been derived from a review of the entire testimonial record and exhibits, with due regard for the logic of probability, the demeanor of the witnesses, and the teachings of *NLRB v. Walton Manufacturing Company,* 369 U.S. 404, 408 (1962). As to those witnesses testifying in contradiction to the findings herein, their testimony has been discredited, either as having been in conflict with credited documentary or testimonial evidence or because it was in and of itself incredible and unworthy of belief.

EXHIBIT _____ **B**

JD(SF)–51–06

### Findings of Fact

#### I. Jurisdiction and labor organization status

5     The Respondent admits facts establishing that it meets the Board's jurisdictional standards and that it is an employer engaged in commerce within the meaning of Section 2(2), (6), and (7) of the Act. Respondent also admits that the Union is a labor organization within the meaning of Section 2(5) of the Act.

10                            II. The alleged unfair labor practices

The Respondent, a California corporation, is the owner and operator of a hotel located near the San Francisco International Airport in South San Francisco. The Union was the exclusive collective-bargaining representative of the housekeeping and maintenance employees
15   of the hotel when Respondent purchased the hotel from Wyndham International in March 2004. Wyndham and the Union were party to a collective-bargaining agreement effective by its terms from December 5, 1999 through November 30, 2003. The Union and Wyndham agreed to a one-year extension of the collective-bargaining agreement through November 2004. When it purchased the hotel in March 2004, Respondent assumed the collective-bargaining agreement
20   then in effect between the Union and Wyndham International. The bargaining agreement contained the following provision at issue herein:

Section. TERM OF AGREEMENT

25   This Agreement shall be in effect for the period commencing December 5, 1999 and continuing to and including November 30, 2003. At least (90) days prior to November 30, 2003 either party may serve notice upon the other by Certified Mail, of a desire to terminate, change or modify this Agreement, or any part thereof. In the event no such notice is given, this Agreement shall be renewed from year to year after the expiration
30   date hereof, subject to written notice of termination or modification ninety (90) days prior to any subsequent anniversary date of this Agreement. For the purpose hereof, December first (1st) of each year, commencing December 5, 1999 shall be deemed the anniversary of this Agreement. If, prior to the expiration date, following the submission of such notice, unless time is mutually extended, the parties fail to reach an Agreement,
35   then either party shall be free to strike or lock out.

Upon receipt of such notice, it is agreed by both parties that negotiations will commence within fifteen (15) days. In the event a new wage settlement is not agreed upon by November 30, 2003 this Agreement shall continue beyond the expiration date
40   thereof for such period of time as parties are engaged in negotiating such successor Agreement.

The complaint alleges that Respondent unlawfully threatened employees with a reduction in hours, threatened to withhold approval of a vacation request, promised benefits,
45   interrogated employees, solicited employees to sign an anti-union petition, and threatened employees with termination for opposing an anti-union petition. The complaint further alleges that Respondent terminated the employment of two housekeeping employees because they refused to sign an anti-union petition. Finally, the complaint alleges that Respondent unlawfully withdrew recognition from the Union during the term of the contract. The General Counsel also alleges that withdrawal of recognition was "unlawful because it relied on a tainted employee petition as the putative evidence of loss of majority support."

2

JD(SF)–51–06

Respondent denies the commission of any unfair labor practices. In addition, Respondent contends that the two employees were discharged based on a slowdown in business. Respondent contends that it lawfully withdrew recognition from the Union based on a petition from a majority of the bargaining unit employees stating that they no longer wished to be
5    represented by the Union. Finally, Respondent contends that the Agreement lawfully expired upon Respondent's withdrawal of recognition.

On August 3, 2004, the Union sent notice of its intent to change, alter and modify the Agreement. Harry Young, Union field representative and Patrick Jordan, Respondent's attorney
10    agreed that the Agreement would remain in effect during bargaining. The parties first met for negotiations on March 11, 2005. Additional negotiation meetings were held on August 23 and September 7, 2005. At the March 11 bargaining session, the Union presented a contract proposal. The parties discussed the fact that Respondent was experiencing financial difficulties and was in arrears to the health and welfare trust fund.

15

At the August 23 meeting, the parties discussed the fact that Respondent was in arrears in making its trust fund contributions. The Union presented Respondent with a written demand that five new housekeepers be discharged unless they met their union-security obligations by Friday, August 26.[2] The Union also presented Respondent with an application for membership
20    in the Union which employees could sign. Jordan asked if Young had cleared this request with the Union's attorneys and Young answered that he had done so. Jordan then directed that copies of the Union's request be made.

On the next day, August 24, Jordan wrote Young agreeing to inform the employees of
25    their union-security obligations and requesting additional time for the employees to meet their dues obligations. On August 31, 2005, Afzal "A.C." Chaudhry (A.C.), Respondent's general manager, and Naomi Grace Vargas, banquet manager, met with employees to read a memo describing the union dues obligations. Vargas, fluent in English and Spanish, was present because she acted as interpreter. The employees were told that Respondent had a labor
30    contract with the Union which required that employees who have worked over 31 days had to pay fees and dues to the Union. A.C. explained that the employees could join the Union and become union members or could pay dues and fees without joining the Union.

Christina Valencia testified that she and Maria Maldonaldo, also a housekeeper, were
35    called into a meeting with A.C. and Vargas.[3] Vargas acted as interpreter for A.C.. According to Valencia, A.C. said that the employees owed the Union $400 and that amount had to be paid by September 26. If the employees did not pay the amount due, the Union would have them fired. According to Valencia, A.C. said that the Union was no good and was costing Respondent a lot of money. Next, A.C. said he did not know why the employees wanted the Union and that
40    Respondent would give the employees paid vacation and Kaiser (health benefits).[4] A.C. said that he did not want to pressure the employees but they could sign a petition to "de-unionize" the hotel. A.C. told the employees to have lunch and that they could come back later and sign "the paper". Valencia and Maldonado did not return after lunch and did not sign an anti-union

45        [2] The five employees were Yolanda Gies, Maria Maldonada, Christina Velencia, Daisy Arana and Mei-Yun Wu.
        [3] While Valencia testified that this meeting took place on September 5, I find that meeting took place on August 31,
        [4] At that point in time, the employees were not receiving health benefits because Respondent was in arrears in making trust fund contributions. After Respondent withdrew recognition from the Union, it provided the employees with health benefits.

JD(SF)–51–06

petition. Valencia further testified that later that afternoon, Vargas asked whether she was going to sign the "the paper." Vargas asked why the employees didn't want to "de-unionize."

5   Maldonado did not testify. General Counsel contends that he made every effort to find Maldonado but was unable to do so. General Counsel offered a pre-trial affidavit from Maldonado in lieu of testimony. While I received the affidavit in evidence, I do not rely on it. In my view, without further direct and cross-examination of Maldonado, the affidavit is not reliable. A.C. and Vargas deny that they did anything more than read to the employees their Union dues obligations. I credit Valencia's testimony over the denials of A.C. and Vargas.[5]

10

Margarita Taloma, housekeeper, testified that in late August, Leah Aquino assistant manager, asked her to sign an anti-union petition. Aquino stated that Taloma's situation might not be as good if the hotel remained unionized. Aquino stated that the Union might only let Taloma work part-time. Aquino said she could only help Taloma if Talloma signed the petition.
15   In early September, Aquino asked Taloma to sign a petition. Shortly thereafter, Parwander Kaur, a front desk employee[6], asked Taloma to sign a petition stating that the employees no longer wished to be represented by the Union. Taloma did not sign. After work, Aquino went to Taloma's home and asked her to sign the petition. Taloma did not sign.[7]

20   On or about September 6, Consuelo Contreras, who inspected the work of the housekeepers and was on the Union's negotiating committee, spoke with housekeeper Xian Tan about the Union. Contreras urged Tan not to sign the anti-union petition and spoke in favor of Union representation. Later that day, A.C. and Eric Yokeno (one of Respondent's owners), asked Contreras why she was telling employees not to sign the petition and that she could be
25   fired for doing so on work time.[8] A.C. and Yokeno questioned Contreras as to whether she was unfairly scheduling the housekeepers. There was an allegation that Contreras was favoring Hispanic employees over Asian employees. Contreras denied such favoritism and stated that if A.C. was unhappy with her scheduling he could do it himself. Thereafter, Contreras ceased doing the scheduling of housekeepers and A.C. did the scheduling himself.

30

On September 7, A.C. met again with Valencia and Maldonado. With Contreras acting as interpreter A.C. terminated Valencia and Maldonado. Valencia asked why two employees, Gies and WU, who were hired after her were being retained. A.C. answered that there was no seniority.[9]

35

The final negotiation meeting between the Union and Respondent took place on September 7. The parties exchanged bargaining proposals. Although Jordan indicated that he did not believe further negotiations would be fruitful, based on Respondent's financial difficulties,

40   [5] I found that A.C.'s testimony regarding the lay offs/discharges of Maldanado and Valencia was shifting and evasive. I, therefore, found A.C. to be an unreliable witness.

[6] The front desk employees are not in the bargaining unit. These employees were formerly represented by another labor organization but are currently not represented by any labor union.

[7] I found Aquino to be an unreliable witness. Her testimony was contradicted by credible
45   witnesses. Further, her credibility was damaged by her participation in backdating two documents.

[8] A.C. admitted that Respondent had no rule against discussing such matters at work and that Contreras had not violated any valid no solicitation rule.

[9] The contract does require that layoffs be based on seniority. However, Respondent contends that the employees at issue herein were all probationary employees and therefore, seniority does not apply.

JD(SF)–51–06

he agreed to another bargaining session. No further bargaining occurred. On September 14 Jordan wrote Young stating that Respondent was withdrawing recognition based on employee petitions stating that a majority of the employees no longer wished to be represented by the Union. [10]

5

On October 4, employee Luz Verdin went to Aquino's office to inquire about her vacation request. Verdin had submitted a vacation request to Contreras in August and that request had been forwarded to Aquino. However, Verdin had not received approval for her vacation. Verdin asked that Aquino approve her vacation request and Aquino asked that Verdin sign the petition
10 to remove the Union. Aquino told Verdin that most of the employees had already signed the petition. Aquino said they would make a deal; Verdin would sign the petition and Aquino would sign Verdin's request. Verdin then signed a petition stating that the employees no longer wished to be represented by the Union. [11] Aquino approved the vacation request but dated it September 14.

15

### III. Respondent's Defenses

Respondent produced business records which show that as summer vacations end and as school resumes in mid-August, the business of the hotel slows down. The occupancy rate
20 . falls after mid-August. In 2005 just as in the prior year, Respondent had reason to layoff housekeeping employees. I find that Respondent had a legitimate business reason to layoff housekeepers in September 2005. The issue is whether employees Maldonado and Valencia were chosen for layoff for unlawful reasons.

25 A.C. testified that he called Contreras, the inspectress[12], into a meeting with Aquino present, to determine which housekeepers to terminate. According to A.C. and Aquino, A.C. told Contreras that the hotel was heading into the slow season and that he had to let two housekeepers go. A.C. then asked Contreras which two housekeepers she would recommend for termination based on performance. Contreras then named Maldonado and Valencia, both
30 probationary employees. Maldonado and Valencia were terminated the next day. Contreras denied that A.C. ever asked her opinion as to who should be laid off. Further, Contreras testified that Valencia and Maldonado performed well.

A.C. admitted that in the past he had laid off employees in the slow season rather than
35 terminate employees. Further, employees were recalled when business picked up. He attempted to explain the difference here by stating that the employees involved were all probationary employees. However, the contract provision regarding layoffs states:

In the event of layoffs due to a reduction in force, probationary employees within the
40 affected classification(s) within departments will be the first to be laid off. Employees will be laid off from and recalled to their regular job classifications within departments in accordance with their seniority providing they have the qualifications to perform satisfactorily the work available in their regular job classification.

45

---

[10] The Union filed the instant charge on October 14.

[11] Although signed on October 4, the petition signed by Verdin bears the date of September 14.

[12] Contreras inspected the hotel rooms after the housekeepers cleaned the rooms. She would be the employee most familiar with the quality of work of the housekeepers.

JD(SF)–51–06

According to A.C., from September 16 to September 24, Respondent had an unexpected increase in the occupancy rate due to a business meeting in San Francisco. A shortage of available rooms in San Francisco resulted in an unexpected demand for rooms at Respondent's hotel. Rather than recall Maldanado and Valencia for this time period,

5    Respondent paid overtime to its housekeepers. Although recalling Maldanado and Valencia would have been consistent with past practice, A.C. testified that he could not recall these two employees because they had been terminated for poor performance.

Respondent contends that the employees began discussing the Union and whether to

10    remain Union without assistance from Respondent. Parwinder Kaur, a non-unit front desk employee testified that she helped housekeeper Sadot Jiminez write a petition stating that the employees no longer wished to be represented by the Union. Sadot was the only employee who signed that petition.[13] Kaur also testified that employee Ermelina Mariazeta had also expressed a desire to be non-union. Mariazeta worked part time at the front desk and part time

15    as a house keeper. Mariazeta started a decertification petition on September 3, 2005. Mariazeta testified that she left the petition for other employees to sign. Eleven employees signed the petition after Mariazeta. Another petition was signed by employee Juan Reyes. Finally, the petition signed by Verdin on October 4 was dated September 14. The parties stipulated that the 12 employees that signed petitions prior to September 14 would represent a

20    majority of the bargaining unit employees. There is no evidence that Kaur, Sadot or Mariazeta were acting on behalf of Respondent in assisting with the non-union petitions.

IV Conclusions

25    A. The independent Section 8(a)(1) allegations

As mentioned above, housekeeper Margarita Taloma testified that in late August, Leah Aquino assistant manager, asked her to sign an anti-union petition. Aquino stated that Taloma's situation might not be as good if the hotel remained unionized. Aquino stated that the Union

30    might only let Taloma work part time. Aquino said she could only help Taloma if Taloma signed the petition. In early September, Aquino went to Taloma's home and asked her to sign the petition. Taloma did not sign.

I find that Aquino threatened that Taloma's hours would be reduced if the hotel remained

35    unionized. See *El Rancho Market*, 235 NLRB 468 (1978). At the same time Aquino accentuated the positive of signing the petition and becoming non-union by stating that she could help Taloma if Taloma signed the anti-union petition. I find by this conduct Respondent unlawfully solicited Taloma to sign the anti-union petition. See *Fabric Warehouse*, 294 NLRB 189 (1989); *Architectual Woodwork Corp.*, 280 NLRB 930 (1986).

40

On or about September 6, after Contreras urged Tan not to sign the anti-union petition and spoke in favor of Union representation, A.C. and Yokeno asked Contreras why she was telling employees not to sign the petition and that she could be fired for doing so on work time. A.C. admitted that there was no rule at the hotel prohibiting Contreras from engaging in such

45    conduct. Accordingly, I find that Respondent violated Section 8(a)(1) of the Act.

As shown above, on October 4, Aquino conditioned approval of Verdin's vacation request upon Verdin signing the non-union petition. Aquino said they would make a deal, Verdin would sign the petition and Aquino would sign Verdin's request. Verdin then signed a

---

[13] Sadot signed two petitions.

6

JD(SF)–51–06

petition stating that the employees no longer wished to be represented by the Union. I find by this conduct Respondent unlawfully threatened to withhold Verdin's vacation and unlawfully solicited Verdin to sign the anti-union petition. See *Fabric Warehouse*, 294 NLRB 189 (1989); *Architectual Woodwork Corp.*, 280 NLRB 930 (1986).

5

After the Union demanded that the new housekeepers meet their union security obligations, A.C. and Vargas met with Maldonado and Valencia on or about August 31. A.C. lawfully told the employees that the Union demanded that they meet their union security obligations by September 26. However, A.C. went on to tell the employees that the Union was no good and that the Union was costing the hotel money. The employees were promised health care benefits and A.C. suggested that the employees sign a petition to de-unionize. Again, I find that by promising benefits, Respondent unlawfully solicited employees to sign the anti-union petition.

15                    B. The Terminations of Valencia and Maldonado

In cases involving dual motivation, the Board employs the test set forth in *Wright Line, A Division of Wright Line, Inc.*, 251 NLRB 1083, 1089 (1980), enfd. 662 F.2d 899 (1st Cir. 1981), cert. denied, 455 U.S. 989 (1982), approved in *NLRB v. Transportation Management Corp.*, 462 U.S. 393, 399-403 (1983). Initially, the General Counsel must establish by a preponderance of the credible evidence that anti-union sentiment was a "motivating factor" for the discipline or discharge. This means that General Counsel must prove that the employee was engaged in protected activity, that the employer knew the employee was engaged in protected activity, and that the protected activity was a motivating reason for the employer's action. *Wright Line, supra*, 251 NLRB at 1090. Unlawful motivation may be found based upon direct evidence of employer animus toward the protected activity. *Robert Orr/Sysco Food Services*, 343 NLRB No. 123, slip op. at 2 (2004). Alternatively, proof of discriminatory motivation may be based on circumstantial evidence, as described in *Robert Orr/Sysco Food Services, supra*:

30          To support an inference of unlawful motivation, the Board looks to such factors as inconsistencies between the proffered reasons for the discipline and other actions of the employer, disparate treatment of certain employees compared to other employees with similar work records or offenses, deviations from past practice, and proximity in time of the discipline to the union activity. *Embassy Vacation Resorts*, 340 NLRB No. 94, slip op. at 3 (2003).

35

When the General Counsel has satisfied the initial burden, the burden of persuasion shifts to Respondent to show by a preponderance of the credible evidence that it would have taken the same action even in the absence of the employee's protected activity. If Respondent advances reasons which are found to be false, an inference that the true motive is an unlawful one may be warranted. *Shattuck Denn Mining Corp. v. NLRB*, 362 F.2d 466, 470 (9th Cir. 1966); *Limestone Apparel Corp.*, 255 NLRB 722 (1981), enfd. 705 F.2d 799 (6th Cir. 1982). However, Respondent's defense does not fail simply because not all the evidence supports its defense or because some evidence tends to refute it. *Merrilat Industries*, 307 NLRB 1301, 1303 (1992). Ultimately, the General Counsel retains the burden of proving discrimination. *Wright Line, supra*, 251 NLRB at 1088, n. 11.

As the hotel's busy season came to an end, A.C. decided to let two employees go. He never adequately explained why he decided to discharge rather than layoff the two employees. In the prior year, he had laid off housekeepers and recalled housekeepers as needed. As stated earlier, I find the drop in the occupancy rate was a legitimate justification to layoff two employees. The issue is whether Maldonado and Valencia were selected for termination because of union activity. General Counsel contends that they were selected for termination

JD(SF)–51–06

because they did not sign the petition to "de-unionize." Respondent contends that they were selected for termination because they were probationary employees whom Contreras had designated as least qualified.

5      At the time of the terminations at issue, Respondent had five probationary housekeepers, Gies, Arana, Wu, Maldonado and Valencia. Maldonado and Valencia were senior to Gies and Wu. Gies and Wu signed Mariazeta's petition stating they no longer wished to be represented by the Union. Most important, Contreras denied that she selected Maldonado and Valencia for termination. Contreras also denied telling A.C. that Maldonado and Valencia 10  had performance problems. As stated above, I find Contreras to be a more credible witness than both A.C. and Aquino.

     General Counsel has shown that Maldonado and Valencia engaged in protected activity by not signing the petitions as requested by their employer. Maldanado and Valencia never 15  returned to A.C. to sign a petition. Vargas knew that they had not signed. Prior to their discharges, 12 employees had signed Mariazeta's petition but Maldanado and Valencia had not signed the petition. While there is no direct evidence that the Respondent had knowledge of Maldonado's and Valencia's failure to sign the petition, I conclude that the General Counsel's prima facie case, supported by circumstantial evidence, is sufficient to establish a reasonable 20  inference of such knowledge. See *Abbey's Transportation Services*, 284 NLRB 698, 700-701 (1987), enfd. 837 F.2d 575 (2d Cir. 1988); *BMD Sportswear Corp.*, 283 NLRB 142 , 143 (1987) enfd. 847 F.2d 835 (2d Cir. 1988).

     Respondent's animus against the Union is established by its unlawful efforts in support 25  of the anti-union petitions. Further, Respondent did not follow its past practice of using seniority in selecting employees for layoff. Respondent did not follow its policy of recalling these employees when it needed them in only nine days after the lay offs. Finally, Respondent's stated reason for the selection of these employees has been discredited. See *Goodyear Tire & Rubber Co.*, 312 NLRB 674 (1993).

30

     Under these circumstances, I find that General Counsel has established a strong prima facie case that Valencia and Maldonado were selected for termination because of their protected activities in not joining in the effort to "de-unionize" the hotel.

35      Thus, the burden shifts to Respondent to establish that the same action would have taken place in the absence of the employee's union activities. Where, as here, General Counsel makes out a strong prima facie case under *Wright Line*, the burden on Respondent is substantial to overcome a finding of discrimination. *Eddyleon Chocolate Co.*, 301 NLRB 887, 890 (1991). An employer cannot carry its *Wright Line* burden simply by showing that it had a 40  legitimate reason for the action, but must "persuade" that the action would have taken place even absent the protected conduct. *Centre Property Management*, 277 NLRB 1376 (1985); *Roure Betrand Dupont, Inc.*, 271 NLRB 443 (1984). As stated earlier, business considerations required layoffs, but Respondent must persuade that Maldanado and Valencia would have been selected for layoff absent their protected activities. In the instant case, my finding that 45  Respondent's defense is a pretext necessarily leaves intact the strong prima facie case established by the General Counsel. *Limestone Apparel Corp.*, 255 NLRB 722 (1981); *California Gas Transport*, 347 NLRB No. 118 (2006).

C. Withdrawal of Recognition

     The parties agree that the following section of the collective-bargaining agreement was in effect:

8

JD(SF)–51–06

This Agreement shall be in effect for the period commencing December 5, 1999 and continuing to and including November 30, 2003. At least (90) days prior to November 30, 2003 either party may serve notice upon the other by Certified Mail, of a

5    desire to terminate, change or modify this Agreement, or any part thereof. In the event no such notice is given, this Agreement shall be renewed from year to year after the expiration date hereof, subject to written notice of termination or modification ninety (90) days prior to any subsequent anniversary date of this Agreement. For the purpose hereof, December first (1st) of each year, commencing December 5, 1999 shall be

10   deemed the anniversary of this Agreement. If, prior to the expiration date, following the submission of such notice, unless time is mutually extended, the parties fail to reach an Agreement, then either party shall be free to strike or lock out.

Upon receipt of such notice, it is agreed by both parties that negotiations will commence

15   within fifteen (15) days. In the event a new wage settlement is not agreed upon by November 30, 2003 this Agreement shall continue beyond the expiration date thereof for such period of time as parties are engaged in negotiating such successor Agreement.

The agreement was extended until November 30, 2004. The Union sent a re-opener

20   notice on August 3, 2004. The parties agreed to keep the status quo in place while negotiations were continuing. Respondent admitted that there was a contract "in place up until the time we withdrew recognition which would obviate the need for any further negotiations."

Under the Board's contract-bar rules, where an employer and a union have entered into

25   a collective-bargaining agreement, the employees are precluded from selecting an alternative bargaining representative during its term. An irrebuttable presumption of continuing majority status is applied during that period. To assure employees a free choice of representative at reasonable intervals, the Board has held that a contract having a fixed term of more than three years operates as a bar for as much of its term as does not exceed three years. *General Cable*

30   *Corp.*, 139 NLRB 1123 (1962). A significant exception is made where the party challenging the contract is either the employer or the contracting union. In those cases, the contract continues as a bar for its entire term. *Montgomery Ward & Co.*, 137 NLRB 346, 348–349 (1962). The Board stated that the contract-bar rules should not be interpreted so as to permit the contracting parties to take advantage of whatever benefits may accrue from the contract "with the

35   knowledge that they have an option to avoid their contractual obligations and commitments through the device of a petition to the Board for an election." Id. *St. Elizabeth's Manor*, 329 NLRB 341, n. 10 (1999), overruled on other grounds by *MV Transportation*, 337 NLRB 770 (2002). While the collective bargaining agreement could not act as a bar to an employee decertification petition, the Employer, as a party to the contract, could not challenge the Union's

40   majority status. Thus, I find that Respondent unlawfully withdrew recognition from the Union at a time when it could not challenge the Union's majority status. Further, as seen below, I find that Respondent could not rely upon the employee petitions to withdraw recognition from the Union.

45   In *Levitz Furniture Co. of the Pacific*, 333 NLRB 717 (2001) the Board stated that an employer may rebut the presumption of an incumbent union's majority status only on a showing of actual loss of majority. The Board stated at 723:

The presumption of continuing majority status essentially serves two important functions of Federal labor policy. First, it promotes continuity in bargaining relationships. . . . The resulting industrial stability remains a primary objective of the Wagner Act, and to an even greater extent, the Taft-Hartley Act. Second, the presumption of continuing

JD(SF)–51–06

majority status protects the express statutory right of employees to designate a collective-bargaining representative of their own choosing, and to prevent an employer from impairing that right without some objective evidence that the representative the employees have designated no longer enjoys majority support.

5

The Board then held that an employer may rebut the continuing presumption of an incumbent union's majority status, and unilaterally withdraw recognition, only on a showing that the union has, in fact, lost the support of a majority of the employees in the bargaining unit. Id at 725. The Board noted that the *Levitz* principles are limited to cases where there have been

10   no unfair labor practices committed that tend to undermine employees' support for unions. The Board stated that it would continue to use its well-established policy that employers may not withdraw recognition in a context of serious unremedied unfair labor practices tending to cause employees to become disaffected from the union. See, e.g., *Williams Enterprises*, 312 NLRB 937, 939–940 (1993), enfd. 50 F.3d 1280 (4th Cir. 1995). fn.1.

15

In cases involving unfair labor practices other than a general refusal to bargain, the Board has identified several factors as relevant to determining whether a causal relationship exists between unremedied unfair labor practices and the subsequent expression of employee disaffection with an incumbent union. These factors include:

20

(1) The length of time between the unfair labor practices and he withdrawal of recognition; (2) the nature of the illegal acts, including the possibility of their detrimental or lasting effect on employees; (3) any possible tendency to cause employee disaffection from the union; and (4) the effect of the unlawful conduct on employee

25   morale, organizational activities, and membership in the union. *Williams Enterprises*, supra citing *Master Slack Corp.*, 271 NLRB 78, 84 (1984). See also *Olson Bodies*, 206 NLRB 779 (1973).

In this case, there are multiple unfair labor practices; including two unlawful discharges

30   which took place, just prior to the withdrawal of recognition. Threats and promises were used in an attempt to obtain employee support of the anti-union petitions. These unfair labor practices were designed to, and had the effect of causing employee dissatisfaction with the Union. An employer may not withdraw recognition from a union while there are un-remedied unfair labor practices tending to cause employees to become disaffected from the union. *Olson Bodies*, 206

35   NLRB 779, 780 (1973). As one court has stated, a "company may not avoid the duty to bargain by a loss of majority status caused by its own unfair labor practices." *NLRB v. Williams Enterprises*, 50 F.3d 1280, 1288 (4th Cir. 1995). Thus, even if Respondent could have withdrawn recognition while it was operating under an agreement to keep the contract in effect, the petitions upon which Respondent withdrew recognition were tainted by Respondent's unfair

40   labor practices. I find that Respondent cannot rely on an expression of disaffection by its employees which is attributable to its own unfair labor practices directed at undermining support for the union. Accordingly, I find that Respondent violated Section 8(a)(5) and (1) of the Act when it withdrew recognition from the Union.

45                                   Conclusions of Law

1. Respondent is an employer engaged in commerce within the meaning of Section 2(2), (6) and (7) of the Act.

2. The Union is a labor organization within the meaning of Section 2(5) of the Act.

JD(SF)–51–06

3. By threatening employees with loss of benefits or promising employees benefits in order to obtain support for an anti-union petition, Respondent violated Section 8(a)(1) of the Act.

5    4. By discharging employees Maria Maldonado and Christina Valencia, in order to discourage union activities and union membership, Respondent violated Section 8(a)(3) and (1) of the Act.

5. By withdrawing recognition from and refusing to bargain with the Union, Respondent violated Section 8(a)(5) and (1) of the Act.

10 .

6 The above unfair labor practices above are unfair labor practices affecting commerce within the meaning of Section 2(6) and (7) of the Act.

Remedy

15

Having found that the Respondent has engaged in certain unfair labor practices, I find that it must be ordered to cease and desist and to take certain affirmative action designed to effectuate the policies of the Act.

20    Respondent having discriminatorily discharged Maria Maldonado and Christina Valencia, it must offer them reinstatement and make them whole for any loss of earnings and other benefits, computed on a quarterly basis from date of discharge to date of proper offer of reinstatement, less any net interim earnings, as prescribed in *F. W. Woolworth Co.*, 90 NLRB 289 (1950), plus interest as computed in *New Horizons for the Retarded*, 283 NLRB 1173
25    (1987).

Respondent must also be required to expunge any and all references to its unlawful discharges of Maldonado and Valencia, from its files and notify Maldonado and Valencia in writing that this has been done and that the unlawful discipline will not be the basis for any
30    adverse action against them in the future. *Sterling Sugars, Inc.*, 261 NLRB 472 (1982).

General Counsel seeks the extraordinary remedy of attorney's fees for Respondent's defense of the withdrawal of recognition allegations. Under the current standard as articulated in *Heck's*, 215 NLRB 765 (1974).[14] The Board will order reimbursement of a charging party's
35    litigation expenses only where the defenses raised by the respondent are "frivolous" rather than "debatable." Here, I do not find that Respondent's defenses were frivolous or asserted in bad faith.

Upon the foregoing findings of fact and conclusions of law, and upon the entire record,
40    and pursuant to Section 10(c) of the Act, I hereby issue the following recommended[15]

45

---

[14] See also *Tiidee Products*, 194 NLRB 1234 (1972).

[15] All motions inconsistent with this recommended order are hereby denied. In the event no exceptions are filed as provided by Sec. 102.46 of the Board's Rules and Regulations, the findings, conclusions, and recommended Order shall, as provided in Sec. 102.48 of the Rules, be adopted by the Board and all objections to them shall be deemed waived for all purposes.

JD(SF)–51–06

## ORDER

Respondent, SFO Good Nite Inn, LLC, its officers, agents, successors, and assigns, shall

5

    1. Cease and desist from:

        a. Threatening employees with loss of benefits or promising benefits, in order to discourage union membership or activities.

10

        b. Discharging employees or laying off employees, in order to discourage union activities and union membership.

        c. Withdrawing recognition from the Union as the exclusive collective-bargaining representative of Respondent's employees in the unit described below.

15

        d. Refusing to meet and bargain with the Union as the exclusive collective-bargaining representative of Respondent's employees in the appropriate bargaining unit with respect to rates of pay, hours of employment, and other terms and conditions of employment including contributions to health insurance, union security and wages.

20

        e. In any like or related manner interfering with, restraining, or coercing employees in the exercise of the rights guaranteed them by Section 7 of the Act.

25

    2. Take the following affirmative action necessary to effectuate the policies of the Act.

        a. Upon request, meet and bargain with the Union as the exclusive collective-bargaining representative of its employees in the appropriate bargaining unit described below with respect to rates of pay, hours of employment, and other terms and conditions, and if an understanding is reached, embody such understanding in a signed agreement. The appropriate bargaining unit is:

30

            All employees covered by the collective-bargaining agreement between Respondent and the Union which was effective by its terms until November 30, 2004.

35

        b. Within 14 days from the date of this Order, offer Maria Maldonado and Christina Valencia full reinstatement to their former jobs or, if those jobs no longer exists, to substantially equivalent positions, without prejudice to their seniority or any other rights or privileges previously enjoyed but for their unlawful discharges.

40

        c. Make Maldonado and Valencia whole for any loss of earnings and other benefits suffered as a result of the discrimination against them in the manner set forth in the Remedy section of the decision.

45

        d. Within 14 days from the date of this Order, remove from its files any reference to the unlawful discharge of Maldonado and Valencia, and within 3 days thereafter notify them in writing that this has been done and that the discipline will not be used against them in any way.

JD(SF)–51–06

e.  Preserve and, within 14 days of a request, or such additional time as the
Regional Director may allow for good cause shown, provide at a reasonable
place designated by the Board or its agents, all payroll records, social security
payment records, timecards, personnel records and reports, and all other
records, including an electronic copy of such records if stored in electronic form,
necessary to analyze the amount of back pay due under the terms of this Order.

f.  Within 14 days after service by the Region, post at its facility in South San
Francisco, California, copies of the attached notice marked "Appendix."[16] Copies
of the notice, on forms provided by the Regional Director for Region 20, after
being signed by the Respondent's authorized representative, shall be posted by
the Respondent immediately upon receipt and maintained for 60 consecutive
days in conspicuous places including all places where notices to employees are
customarily posted. Reasonable steps shall be taken by the Respondent to
ensure that the notices are not altered, defaced, or covered by any other
material. In the event that, during the pendency of these proceedings, the
Respondent has gone out of business or closed the facility involved in these
proceedings, the Respondent shall duplicate and mail, at its own expense, a
copy of the notice to all current employees and former employees employed by
the Respondent at any time since September 2005.

g.  Within 21 days after service by the Region, file with the Regional Director a
sworn certification of a responsible official on a form provided by the Region
attesting to the steps that the Respondent has taken to comply.

Dated: Washington, DC   September 28, 2006

Jay R. Pollack
Administrative Law Judge

---

[16] If this Order is enforced by a Judgment of the United States Court of Appeals, the words
in the notice reading "POSTED BY ORDER OF THE NATIONAL LABOR RELATIONS BOARD"
shall read "POSTED PURSUANT TO A JUDGMENT OF THE UNITED STATES COURT OF
APPEALS ENFORCING AN ORDER OF THE NATIONAL LABOR RELATIONS BOARD."

13

## APPENDIX

## NOTICE TO EMPLOYEES

Posted by Order of the
National Labor Relations Board
An Agency of the United States Government

After a hearing at which all sides had a chance to give evidence, the National Labor Relations Board has found that we violated Section 8(a)(1)(3) and (5)  of the National Labor Relations Act, as amended, and has ordered us to post and abide by this notice

The National Labor Relations Act gives all employees the following rights:

FEDERAL LAW GIVES YOU THE RIGHT TO

Form, join, or assist a union
Choose representatives to bargain with us on your behalf
Act together with other employees for your benefit and protection
Choose not to engage in any of these protected activities

WE WILL NOT threaten you with loss of benefits or promise benefits in order to discourage union membership or activities.

WE WILL NOT discharge employees or lay off employees, in order to discourage union activities and union membership.

WE WILL NOT withdraw recognition from Unite Here! Local 2 as the exclusive collective-bargaining representative of our employees in the unit described below.

WE WILL NOT refuse to meet and bargain with the Union as the exclusive collective-bargaining representative of our employees in the appropriate bargaining unit with respect to rates of pay, hours of employment, and other terms and conditions of employment including contributions to health insurance, union security, and wages.

WE WILL NOT In any like or related manner interfere with, restrain, or coerce employees in the exercise of the rights guaranteed them by Section 7 of the Act.

WE WILL offer Maria Maldonado and Christina Valencia full reinstatement to their former jobs or, if those jobs no longer exist, to  substantially equivalent positions, without prejudice to their seniority or any other rights or privileges previously enjoyed but for their unlawful discharges.

WE WILL Make Maria Maldonado and Christina Valencia whole for any loss of earnings and other benefits suffered as a result of the discrimination against them, with interest.

WE WILL remove from our files any reference to the unlawful discharge of Maldonado and Valencia and WE WILL NOT make reference to the permanently removed materials in response to any inquiry from any employer, employment agency, unemployment insurance office, or reference seeker and we will not use the permanently removed material against these employees.

Case 3:07-cv-02588-BZ    Document 8-4    Filed 08/01/2007    Page 30 of 37
Case 3:06-cv-07335-MJJ    Document 1    Filed 11/28/2006    Page 59 of 66
JD(SF)–51–06

WE WILL upon request, meet and bargain with the Union as the exclusive collective-bargaining representative of its employees in the appropriate bargaining unit described below with respect to rates of pay, hours of employment, and other terms and conditions, and if an understanding is reached, embody such understanding in a signed agreement. The appropriate bargaining unit is:

> All employees covered by the collective-bargaining agreement between Respondent and the Union which was effective by its terms until November 30, 2004.

**SFO GOOD-NITE INN, LLC**
_____
(Employer)

Dated _____ By _____
                              (Representative)              (Title)

The National Labor Relations Board is an independent Federal agency created in 1935 to enforce the National Labor Relations Act. It conducts secret-ballot elections to determine whether employees want union representation and it investigates and remedies unfair labor practices by employers and unions. To find out more about your rights under the Act and how to file a charge or election petition, you may speak confidentially to any agent with the Board's Regional Office set forth below. You may also obtain information from the Board's website: www.nlrb.gov.

901 Market Street, Suite 400
San Francisco, California 94103-1735
Hours: 8:30 a.m. to 5 p.m.
415-356-5130.

**THIS IS AN OFFICIAL NOTICE AND MUST NOT BE DEFACED BY ANYONE**

THIS NOTICE MUST REMAIN POSTED FOR 60 CONSECUTIVE DAYS FROM THE DATE OF POSTING AND MUST NOT BE ALTERED, DEFACED, OR COVERED BY ANY OTHER MATERIAL. ANY QUESTIONS CONCERNING THIS NOTICE OR COMPLIANCE WITH ITS PROVISIONS MAY BE DIRECTED TO THE ABOVE REGIONAL OFFICE'S COMPLIANCE OFFICER, 415-356-5139.

INTERNET
FORM NLRB-501
(11-94)

UNITED ST..ES OF AMERICA
NATIONAL LABOR RELATIONS BOARD
**CHARGE AGAINST EMPLOYER**

.FORM EXEMPT UNDER 44 U.S.C. 3512

DO NOT WRITE IN THIS SPACE

| Case | Date Filed |
|------|-----------|
| 20-CA-32754 | 10/14/2005 |

**INSTRUCTIONS:**
File an original and 4 copies of this charge with NLRB Regional Director for the region in which the alleged unfair labor practice occurred or is occurring.

| 1. EMPLOYER AGAINST WHOM CHARGE IS BROUGHT | | |
|---|---|---|
| a. Name of Employer<br>Good-Nite Inn SFO | | b. Number of Workers Employed<br>23 |
| c. Address (street, city, State, ZIP, Code)<br>245 So. Airport Blvd.<br>So. San Francisco, CA 94080 | d. Employer Representative<br><br>Afzal Chaudbry, General Manager | e. Telephone No.<br>(650)-589-7200<br>Fax No.<br>(650) 589-0191 |
| f. Type of Establishment (factory, mine, wholesaler, etc.)<br>Hotel | g. Identify Principal Product or Service<br>Hospitality Lodging | |

h. The above-named employer has engaged in and is engaging in unfair labor practices within the meaning of Section 8(a), subsections (1) and (list subsections) **5** of the National Labor Relations Act, and these unfair labor practices are unfair practices affecting commerce within the meaning of the Act.

2. Basis of the Charge (set forth a clear and concise statement of the facts constituting the alleged unfair labor practices.)

Within the past 6 months the above named employer has threatened, coerced, and restrained employees in violation of their rights under the act.

The employer has, subsequent to their violation of the act, withdrawn recognition and refused to bargain with UNITE HERE Local 2.

RECEIVED
NLRB: REGION 20
2005 OCT 14 P 1:22
SAN FRANCISCO, CA

By the above and other acts, the above-named employer has interfered with, restrained, and coerced employees in the exercise of the rights guaranteed in Section 7 of the Act.

3. Full name of party filing charge (if labor organization, give full name, including local name and number)
UNITE HERE Local 2

| 4a. Address (street and number, city, State, and ZIP Code)<br>209 Golden Gate Ave.<br>San Francisco, CA 94102 | 4b. Telephone No.<br>(650) 344-6827 ext 803<br>Fax No.<br>(650) 344- 9406 |
|---|---|

5. Full name of national or international labor organization of which it is an affiliate or constituent unit (to be filled in when charge is filed by a labor organization)
UNITE HERE! International Union

| 6. DECLARATION | |
|---|---|
| I declare that I have read the above charge and that the statements are true to the best of my knowledge and belief. | |
| By _____<br>(Signature of representative or person making charge) | Organizer<br>(Title, if any) |
| Address 209 Golden Gate Ave., San Francisco, CA 94110 | Fax No. (650) 344- 9406<br>(650) 344-6827 ext 803      Oct 13, 2005<br>(Telephone No.)           Date |

WILLFUL FALSE STATEMENTS ON THIS CHARGE CAN BE PUNISHED BY FINE AND IMPRISONMENT (U.S. CODE, TITLE 18, SECTION 1001)

 

EXHIBIT ___C___

Nov-21-05  09:45am  From-MIKE CASEY

NLRB FORM NLRB-501
(11-94)

**UNITED STATES OF AMERICA**
**NATIONAL LABOR RELATIONS BOARD**
**CHARGE AGAINST EMPLOYER**

DO NOT WRITE IN THIS SPACE

| Case | Date Filed |
|------|-----------|
| 20–CA–32754 | 11/21/2005 |

**INSTRUCTIONS:**
File an original and 4 copies of this charge with NLRB Regional Director for the region in which the alleged unfair labor practice occurred or is occurring.

| 1. EMPLOYER AGAINST WHOM CHARGE IS BROUGHT | | |
|---|---|---|
| a. Name of Employer<br>GGOD-NITE INN SFO | | b. Number of Workers Employed<br>23 |

| c. Address (street, city, State, ZIP, Code)<br>245 S. Airport Blvd.<br>South San Francisco, Ca. 94080 | d. Employer Representative<br>Afzal Chaudhry | e. Telephone No.<br>(650) 589-7200<br>Fax No.<br>(650) 589-0191 |
|---|---|---|

| f. Type of Establishment (factory, mine, wholesaler, etc.)<br>Hotel | g. Identify Principal Product or Service<br>Hospitality Lodging |
|---|---|

h. The above-named employer has engaged in and is engaging in unfair labor practices within the meaning of Section 8(a), subsections (1) and (list subsections) 3 _____ of the National Labor Relations Act, and these unfair labor practices are unfair practices affecting commerce within the meaning of the Act.

2. Basis of the Charge (set forth a clear and concise statement of the facts constituting the alleged unfair labor practices.)

FIRST AMENDED CHARGE TO 20-CA-32754

The Union hereby amends the Charge in NLRB Case # 20-CA-32754 to allege the following:

During the past six (6) months, the above named employer through its agents, 1. had its manager(s) solicit signatures on a decertification petition in an attempt to decertify the Union, 2. unlawfully interrogated employees regarding their support for the Union, 3. threatened employees who were engaged in protected activity. These were all violations of Section 8(a)(1) of the Act.

In addition, the above named employer unlawfully laid off two (2) employees and reduced the hours of a third employee in violation of Section 8(a)(3) of the Act.

The Union requests that the Region seek 10(j) injunctive relief in addition to any other remedies.

RECEIVED NLRB: REGION 20
2005 NOV 21 P ... SAN FRANCISCO, ...

By the above and other acts, the above-named employer has interfered with, restrained, and coerced employees in the exercise of the rights guaranteed in Section 7 of the Act.

| 3. Full name of party filing charge (if labor organization, give full name, including local name and number)<br>UNITE HERE Local 2 | | |
|---|---|---|

| 4a. Address (street and number, city, State, and ZIP Code)<br>209 Golden Gate Ave.<br>San Francisco, CA 94102 | 4b. Telephone No.<br>(650) 344-6827 x 803<br>Fax No.<br>(650) 344-9406 |
|---|---|

5. Full name of national or international labor organization of which it is an affiliate or constituent unit (to be filled in when charge is filed by a labor organization)
UNITE HERE! International Union

| 6. DECLARATION |
|---|
| I declare that I have read the above charge and that the statements are true to the best of my knowledge and belief. |

By _Richard Kumar_    Richard Kum    FIELD REP.
(Signature of representative or person making charge)    (Title, if any)

Address  SAME

Fax No. (650) 344-9406
SAME
(Telephone No.)

November 21, 2005
Date

WILLFUL FALSE STATEMENTS ON THIS CHARGE CAN BE PUNISHED BY FINE AND IMPRISONMENT (U.S. CODE, TITLE 18, SECTION 1001)

**EXHIBIT    D**

FORM NLRB-501
(11-88)

UNITED STA    OF AMERICA
NATIONAL LABOR RELATIONS BOARD

**Second-Amended CHARGE AGAINST EMPLOYER**

DO NOT WRITE IN THIS SPACE

| Case | Date Filed |
|---|---|
| 20-CA-32754 | / / 12/15/2005 |

**INSTRUCTIONS:**
File an original together with four copies and a copy for each additional charged party named in Item 1 with NLRB Regional Director for the region in which the alleged unfair labor practice occurred or is occurring.

## 1. EMPLOYER AGAINST WHOM CHARGE IS BROUGHT

| a. Name of Employer | b. Number of workers employed |
|---|---|
| Good-Nite Inn SFO | 23 |

| c. Address (Street, city, state, and ZIP code) | d. Employer Representative | e. Telephone No. |
|---|---|---|
| 245 S. Airport Blvd. | Afzal | (650)589-7200 |
| South San Francisco    CA    94080- | Chaudhry | Fax No. ( ) - |

| f. Type of Establishment (factory, mine, wholesaler, etc.) | g. Identify principal product or service |
|---|---|
| hotel | hospitality lodging |

h. The above-named employer has engaged in and is engaging in unfair labor practices within the meaning of section 8(a), subsections (1) and (list subsections) __(3) and (5)__ of the National Labor Relations Act, and these unfair labor practices are practices affecting commerce within the meaning of the Act.

**2. Basis of the Charge** (set forth a clear and concise statement of the facts constituting the alleged unfair labor practices)

Within the past six months, the above-named Employer through its agents: (1) had its manager(s) solicit signatures on a decertification petition in an attempt to decertify the Union; (2) unlawfully interrogated employees regarding their support for the Union; (3) threatened employees who were engaged in protected and/or union activity; and (4) promised employees benefits if they abandoned support for the Union.

Additionally, the Employer unlawfully laid off two employees and reduced the hours of a third employee in violation of Seciton 8(a)(3) of the Act.

Finally, the Employer unlawfully withdrew recognition from the Union in violation of Section 8(a)(5) of the Act.

The Union requests that the Region seek 10(j) injunctive relief in addition to any other remedies.

SAN FRANCISCO, CA    2005 DEC 15    A 9:23    RECEIVED NLRB, REGION 20

By the above and other acts, the above-named employer has interfered with, restrained, and coerced employees in the exercise of the rights guaranteed in Section 7 of the Act.

3. Full name of party filing charge (if labor organization, give full name, including local name and number)
UNITE HERE Local 2

| 4a. Address (Street and number, city, state, and ZIP code) | 4b. Telephone No. |
|---|---|
| 209 Golden Gate Avenue | (650)344-6827    803 |
| San Francisco    CA    94102- | Fax No. (650)344-9406 |

5. Full name of national or international labor organization of which it is an affiliate or constituent unit (to be filled in when charge is filed by a labor organization)
   UNITE HERE International Union

## 6. DECLARATION

I declare that I have read the above charge and that the statements are true to the best of my knowledge and belief.

| By (signature of representative or person making charge) | Kim    Wirshing    attorney (Print/type name and title or office, if any) |
|---|---|
| name Address __SAME__ | (fax) ( ) - (415)864-8770    x 727    12/15/05 (Telephone No.)    (date) |

WILLFUL FALSE STATEMENTS ON THIS CHARGE CAN BE PUNISHED BY FINE AND IMPRISONMENT (U.S. CODE, TITLE 18, SECTION 1001)

**EXHIBIT E**

RICHARD W. WIEKING, CLERK
U.S. DISTRICT COURT
NO. DIST. OF CA.

2006 NOV 28  P 2: 15

RECEIVED

EXHIBIT